IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRONG HO LUONG, | ) |
| | ) |
|     Petitioner, | ) |
| v. | ) |
| | )   Case No. 3:25-cv-422 |
| LEONARD OTTO, *Warden, Moshannon* | )   Judge Stephanie L. Haines |
| *Valley ICE Processing Center, et al.*, | ) |
| | ) |
|     Respondents. | ) |

## **MEMORANDUM ORDER**

Pending before the Court is Petitioner Trong Ho Luong's ("Petitioner") Motion for a Temporary Restraining Order ("T.R.O.") ("Petitioner's Motion") filed on December 9, 2025, ECF No. 10, alongside a Brief in Support. ECF No. 11. In his Motion, Petitioner requests that this Court: enjoin Respondents from transferring him to a facility outside of the Western District of PA, enjoin Respondents from detaining him pursuant to 8 U.S.C. § 1225(b)(2), and order his immediate release. ECF No. 10, p. 1.[1]

For the following reasons, the Court will DENY Petitioner's Motion.

---

[1] The relief Petitioner actually seeks is a moving target. While Petitioner articulates the relief requested in his Motion for a T.R.O, ECF No. 10, in the following manner:

> Petitioner respectfully requests that this Court grant this Motion for a Temporary Restraining Order and issue an order (i) enjoining Respondents from moving him outside the Western District of Pennsylvania; (ii) enjoining Respondents from detaining Petitioner under 8 U.S.C. § 1225(b)(2); and (iii) ordering Petitioner's immediate release from Respondents' custody.

ECF No 10, p. 1, Petitioner requests, in his Brief in Support, that this Court enter an Order that:

> [Directs] Respondents to immediately release him from custody, enjoin[s] Respondents from moving him outside of the Western District of Pennsylvania while he is detained, *and enjoin[s] Respondents from detaining Petitioner without proper compliance with the constitutional, statutory, and regulatory framework.*

ECF No. 11, pp. 5, 9 (emphasis added) (articulating the request for relief relative to the following claim: "ICE detained him without following the proper re-detention procedures."). As such, the Court will address the scope of relief Petitioner clearly requests.

I.   **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 65:

The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). In order to obtain a T.R.O. or a P.I., a petitioner must show that: (1) he is likely to succeed on the merits, (2) denial will result in irreparable harm to the petitioner, (3) granting the injunction will not result in irreparable harm to the respondent(s), and (4) granting the injunction is in the public interest. *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998); *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994) ("The standards for a temporary restraining order are the same as those for a preliminary injunction."); *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). The first two factors, likelihood of success on the merits and irreparable harm "operate both as essential elements and as factors that guide the exercise of equitable discretion. They are elements because the failure of the moving party to make *either* of those threshold showings is fatal to the issuance of a preliminary injunction." *Transcontinental Gas Pipe Line Co., LLC v. Pennsylvania Environmental Hearing Board*, 108 F.4th 144, 150 (3d Cir. 2024) (emphasis added).

A T.R.O. and a P.I. may be distinguished by the type of relief each afford and the procedural mechanisms by which each may be obtained under Federal Rule of Civil Procedure 65.[2] *See Granny Goose Foods Inc. v. Brotherhood of Teamsters*, 415 U.S. 429, 439 (1974)

---

[2] The Third Circuit has made clear that "a court may not convert an *ex parte* [T.R.O.] into a preliminary injunction without a hearing or issue an *ex parte* preliminary injunction." *Hope v. Warden York County Prison*, 972 F.3d 310,

("[U]nder federal law [T.R.O.s] should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."); *Hope I*, 956 F.3d at 160 (finding that where the district court purported to enter an *ex parte* TRO but directed the release of twenty petitioners, the "relief altered the status quo, exceeding the temporary and limited nature of a TRO"); *Snee v. Barone*, 359 F.App'x. 281, 284 n.4 (3d Cir. 2009) ("[T]emporary restraining orders are of extremely short duration and typically issue without notice to the opposing party."); *J.O. ex rel. C.O. v. Orange Twp. Bd. Of Educ.*, 287 F.3d 267. 273 (3d Cir. 2002)). Because "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted [to] both sides of a dispute[,]" *Granny Goose Foods Inc. v. Brotherhood of Teamsters*, 415 U.S. 429, 439 (1974), T.R.O.s "may be appropriate at times, [but] they must be circumscribed in nature." *Hope I*, 956 F.3d at 160.

## II.     Analysis

Here, Petitioner requests in his Motion for a T.R.O., ECF No. 10, that this Court: enjoin Respondents from transferring him to a facility outside of the Western District of PA, enjoin Respondents from detaining him pursuant to 8 U.S.C. § 1225(b)(2), and order his immediate release. ECF No. 10, p. 1. In this way, Petitioner requests relief that goes beyond the "limited nature of a [T.R.O.]" and instead requests "mandatory, affirmative relief[.]"[3] *Hope I*, 956 F.3d at 162 (finding that where the district court purported to enter an *ex parte* T.R.O. but directed the

---

321 (3d Cir. 2020) [*Hope II*]. A Court does so when it issues a T.R.O. that "goes beyond preservation of the status quo and mandates affirmative relief." *Hope v. Warden York County Prison*, 956 F.3d 156, 160 (3d Cir. 2020) [*Hope I*].

[3] Petitioner's request for an order barring his transfer is not a request for affirmative relief. However, for reasons the Court explains in the next subsection, the Court lacks jurisdiction to afford Petitioner this relief. Therefore, Petitioner's request for a T.R.O. is wholly unavailing, and the Court proceeds to consider his Motion in so much as it requests a P.I.

3

release of twenty petitioners, the "relief altered the status quo, exceeding the temporary and limited nature of a [T.R.O.]") (citing *Granny Goose*, 415 U.S. at 439); *see also* ECF No. 1, p. 17.

Thus, this Court will DENY Petitioner's Motion in so much as it requests relief via a T.R.O. as a T.R.O. is not the appropriate vehicle for such relief. However, to the extent that Petitioner requests a preliminary injunction, *see* ECF No. 11, p. 9 ("The Court should grant a temporary restraining order or preliminary injunction[.]"), the Court will consider Petitioner's claims below.

### a. Request for an Injunction Prohibiting Petitioner's Transfer

The Court notes that an alien detainee's request to enjoin his or her transfer when that detainee is in custody pursuant to the Immigration and Nationality Act ("INA") raises jurisdictional concerns. Congress has "limited federal district courts' jurisdiction to review decisions or actions made pursuant to the sound discretion of DHS officials[.]" *Jane v. Rodriguez*, No. CV 20-5922 (ES), 2020 WL 10140953, at *1 (D.N.J. May 22, 2020). Indeed, 8 U.S.C. § 1252(a)(1)(B)(ii) provides that "no court shall have jurisdiction to review any decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security…" And, in 8 U.S.C. § 1231(g)(1), Congress clearly set forth that: "[t]he Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." In this way, § 1231(g)(1) establishes that:

> [T]he place of detention is left to the discretion of the Attorney General. *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *Gandarillas–Zambrana v. BIA,* 44 F.3d 1251, 1256 (4th Cir.1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings ... and therefore, to transfer aliens from one detention center to another."); *Rios–Berrios v. INS,* 776 F.2d 859, 863 (9th Cir.1985) ("We are not saying that the petitioner should not have been transported to Florida. That is within the province of the Attorney General to

decide."); *Sasso v. Milhollan,* 735 F.Supp. 1045, 1046 (S.D.Fla.1990) (holding that the Attorney General has discretion over location of detention).

*Sinclair v. Attorney General of U.S.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006).

Here, Petitioner points to no authority upon which this Court may properly enjoin Respondents from transferring Petitioner to another facility. *See Calla-Collado v. Attorney General of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) ("Congress has vested the Department of Homeland Security ("DHS") with authority to enforce the nation's immigration laws. Thus, as a part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings… and therefore, to transfer aliens from one detention center to another.'") (quoting *Gandarillas-Zambrana v. Bd. Of Immigration Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995)). Therefore, because this Court lacks jurisdiction to enjoin Respondents from transferring Petitioner, it will DENY Petitioner's Motion insofar as he seeks an injunction preventing his transfer to another facility.

### b. Request for Injunction Preventing Respondents from Detaining Petitioner Pursuant to 8 U.S.C. § 1225(b)(2)

In Petitioner's Motion, he requests that this Court grant him injunctive relief preventing Respondents from detaining him pursuant to 8 U.S.C. § 1225(b)(2). However, Petitioner also sets forth that an Immigration Judge ordered that he be removed to Vietnam in 2005 "based on a criminal conviction in 2003 involving controlled substances." ECF No. 11, p.2. In this way, Petitioner seems to suggest that he is detained pursuant to 8 U.S.C. § 1231(a)(6) rather than § 1225(b)(2). ECF No. 11, p. 2 ("Petitioner's detention violates 8 U.S.C. § 1231(a)(6), and he is entitled to immediate release.").

Broadly speaking, 8 U.S.C. §§ 1225(b)(2) and 8 U.S.C. §§ 1226(a) and (c) apply to aliens who have not received a final order of removal while 8 U.S.C. § 1231(a)(6) applies to aliens who

have received a final order of removal. *Cf. Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. *Those aliens shall be detained for a [removal] proceeding*' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country.") (quoting 8 U.S.C. § 1225(b)(2)) (emphasis added) (alterations in original); *id.* at 289 (explaining that United States immigration law "authorizes the Government to detain certain aliens already in the country *pending the outcome of removal proceedings* under *§§ 1226(a) and (c)*."); *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) ("*After entry of a final removal order* and during the 90–day removal period, however, aliens must be held in custody. Subsequently, as *the post-removal-period statute* provides, the Government "may" continue to detain an alien who still remains here or release that alien under supervision.") (internal citations omitted) (citing 8 U.S.C. §§ 1231(a)(2) and (a)(6)) (emphasis added).

In light of the foregoing, it is the Court's understanding that Petitioner is being detained pursuant to 8 U.S.C. § 1231 rather than § 1225. Therefore, the Court will DENY Petitioner's Motion requesting an injunction preventing Respondents from detaining him pursuant to 8 U.S.C. § 1225(b)(2) as Petitioner has failed to demonstrate a likelihood of success on the merits relative to any claim predicated on this basis due to the fact that, by his own pleading, he is not being detained pursuant to 8 U.S.C. § 1225(b)(2). *Transcontinental Gas Pipe Line Co., LLC*, 108 F.4th at 150 (explaining that failure to make a showing of either threshold factor is fatal to a request for injunctive relief). The Court, however, will continue to evaluate Petitioner's request that this Court "enjoin Respondents from detaining Petitioner without proper compliance with the constitutional, statutory, and regulatory framework" as raised in his Brief in Support of his Motion. ECF No. 11, p. 9.

i. **Request for Immediate Release as His Continued Detention Violates 8 U.S.C. § 1231**

Petitioner sets forth that his "detention violates 8 U.S.C. § 1231(a)(6), and he is entitled to immediate release." ECF No. 11, p. 2. On this score, Petitioner passingly contends that his detention is unlawful as it "is not reasonably related to Section 1231's primary purpose of ensuring his imminent removal[.]" ECF No. 11, p. 3. Petitioner argues that because Respondents were unable to effectuate his removal to Vietnam when he was ordered removed twenty years ago, they will be unable to again; thus, he contends that his detention "is likely to continue indefinitely." *Id.* at p. 5. However, Petitioner fails to articulate either (1) the factual basis that renders Respondents attempts to remove him in the present instance—as opposed to twenty years ago—fruitless or, relatedly, (2) the legal basis for the argument that his current detention violates § 1231 and how that legal basis demonstrates that he is likely to succeed on the merits of this claim.

In *Zadvydas*, the Supreme Court decided that 8 U.S.C. § 1231(a)(6), the post-removal-period statute, authorizes the Government to detain a removable alien "only for a period *reasonably necessary* to secure the alien's removal," rather than "*indefinitely* beyond the removal period." 533 U.S. at 682 (emphasis in original). And, in attempts to "guide lower court determinations" and "for the sake of uniform administration in the federal courts[,]" the *Zadvydas* Court recognized six months as a presumptively reasonable period of post-removal detention. *Id.* at 701. Still, the Court explained that the presumptively reasonable time-period is merely a presumption, not an ironclad timeframe. *Id.* ("This *6–month presumption*, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.") (emphasis added). As such, *after the six-month period has passed*, the alien bears the burden to adduce "good reason to believe that there is no

7

significant likelihood of removal in the reasonably foreseeable future[;]" once such a showing is made, the burden shifts to the Government and it must then "respond with evidence sufficient to rebut that showing." *Id.*; *see also Barenboy v. Attorney General*, 160 F. App'x 258, 261 n.2 (3d Cir. 2005).

This Court has previously rejected theories of aggregation advanced by various petitioners relative to calculating the post-removal period of detention for *Zadvydas* purposes, especially when the periods of detention are separated by long terms of release—such as is the case here. *See Roe v. Oddo*, No. 3:25-cv-128m 2025 WL 3030692, at *7 n.8 (W.D. Pa. Oct. 30, 2025); *Pan v. Oddo*, 3:25-cv-265, ECF No. 9, p. 2, n.1 (W.D. Pa. Aug. 22, 2025). Indeed, the *Zadvydas* Court was primarily concerned with firmly establishing that indefinite detention is unlawful. *See* 533 U.S. at 682, 695 ("[T]he issue we address is whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States."). To aggregate periods of detention separated by long terms of release in order to determine whether a petitioner is instantly subject to unreasonable and indefinite detention would be improper. Should this position be adopted, a petitioner's detention could fall outside of the presumptively reasonable period the instant he or she is re-detained. *See Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) ("Petitioner argues that his detention should be counted in the aggregate based upon his prior detentions. However, if the Court counted detentions in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns.") (citing *Meskini v. Attorney General of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *4 (M.D. Ga. Mar. 14, 2018)) (finding that *Zadvydas* is not a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past."). Each individual detention must be evaluated by its own unique factual circumstances to ensure it

accords with the law: i.e., lasts only so long as removal is reasonably foreseeable. *See Zadvydas*, 533 U.S. at 699 ("[W]e conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."); *see also White v. Warden Pike County Correctional Facility*, No. 23-28722024 WL 4164269, at *1 (3d Cir. Sept. 12, 2024) (noting in the context of determining whether a detention has continued for a reasonable time under § 1226(c) that "[r]easonableness is a fact-specific inquiry[.]"). Thus, in order to determine whether Petitioner is currently detained in violation of § 1231(a)(6), after he was re-detained by ICE on August 19, 2025, the Court will look to the nearly four consecutive months Petitioner has remained in ICE detention following the instant re-detention. ECF No. 1, ¶ 37

Here, Petitioner has not been detained for six months following his August re-detention nor has he carried his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Merely pointing to an inability to secure removal twenty years ago is insufficient to carry the burden of producing good reason to believe that removal is not, at this point in time, likely in the reasonably foreseeable future. Errantly, Petitioner appears to argue that the initial burden is on the Respondents. ECF No. 11, p. 10 ("The government now claims it can re-detain Petitioner to try to remove him to Vietnam. It cannot explain why it should be permitted to re-detain Petitioner before even initiating the travel document process with Vietnam."). The initial burden when requesting injunctive relief or release under *Zadvydas*/8 U.S.C. § 1231 falls on Petitioner both under the standard of Federal Rule of Civil Procedure 65 and *Zadvydas*. As Petitioner has not been in continuous detention for six months following his re-detention in August and has failed to carry this initial burden to demonstrate a likelihood of success on the merits, his Motion must be DENIED insofar as it seeks relief through the claim that his current detention violates 8 U.S.C. § 1231(a)(6). *See*

*Transcontinental Gas Pipe Line Co., LLC*, 108 F.4th at 150 (explaining that failure to make a showing of either threshold factor is fatal to a request for injunctive relief).

> ii. **Request for an Injunction Preventing Respondents from detaining Petitioner Without Proper Compliance with the Constitutional, Statutory, and Regulatory Framework**

In his Brief in Support of his Motion for a T.R.O., Petitioner requests that this Court enjoin Respondents from detaining him "without proper compliance with the constitutional, statutory, and regulatory framework." ECF No. 11, p. 9. The Court understands this request to go to his allegation that "ICE detained him without following the proper re-detention procedures." ECF No. 11, p. 5. For the following reasons, this Court finds that it does not have jurisdiction to adjudicate this claim.

"[T]o prevent removal proceedings from becoming fragmented, and hence prolonged…Congress used complementary provisions to funnel removal-related claims away from district courts and into a petition for review in a single court of appeals[;] [s]ometimes, the provisions overlap." *Tazu v. Attorney General United States*, 975 F.3d 292, 296 (3d Cir. 2020) (citing 8 U.S.C. § 1252(b)(9) and (g); *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483 (1999)) (cleaned up) (internal quotations omitted). At issue here are two overlapping provisions that restrict a district court's jurisdiction to adjudicate claims involving: (1) issues related to removal, and (2) issues committed to the discretion of the Executive Branch— 8 U.S.C. § 1252(b)(9) and § 1252(g).

"Section 1252(b)(9) is colloquially known as the 'zipper clause'[.]" *Trabelsi v. Crawford*, No. 1:24-cv-1509, 2024 WL 5497113, at *5 (E.D. Va. Dec. 2, 2024). It states:

> Judicial review of *all* questions of law and fact including interpretation and application of constitutional and statutory provisions, arising from *any action taken* or proceeding brought *to remove an alien from the United States* under this

10

> subchapter shall be available *only* in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added). In this way, "§ 1252(b)(9) funnels" "*any claim* "aris[ing] from *any action* taken. . . to remove an alien" "into a petition for review[,]" which is to be "filed with the appropriate court of appeals." *Tazu*, 975 F.3d at 294, 299 (emphasis added).[4]

In contrast to § 1252(b)(9), § 1252(g) "does not sweep broadly." *Id.* at 296. Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear *any cause or claim* by or on behalf of any alien *arising from the decision or action* by the Attorney General *to* commence proceedings, adjudicate cases, or *execute removal orders* against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added). This "provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno*, 525 U.S. at 482 (quoting 8 U.S.C. § 1252(g)) (emphasis provided); *see also Tazu*, 975 F.3d at 296 (Section 1252(g) "reaches only these three specific actions, not everything that arises out of them.") (citing *Jennings*, 583 U.S. at 292–94).

---

[4] Importantly, the Third Circuit has clarified that while § 1252(b)(9) greatly limits the claims which may be raised outside of a petition for review, it "does not foreclose *all* claims by an immigration detainee." *Tazu*, 975 F.3d at 299 (emphasis added). For example, an alien detainee may pursue a challenge to the length of his confinement outside a petition for review. *See id.* (citing *E.O.H.C. v. Secretary United States Department of Homeland Security*, 950 F.3d 177, 186 (3d Cir. 2020)). Because "[c]hallenges to the length or conditions of an alien's confinement are not directly about removal . . . the Act does not funnel them into a petition for review. *Id.* These claims may be raised outside of a petition for review because, '[f]or these claims, review is now or never.'" *Id.* (quoting *E.O.H.C.*, 950 F.3d at 180);. "[B]y contrast, [a] re-detention challenge *is* directly about removal[;]" as a result, whether the claim is analyzed "under § 1252(g) or § 1252(b)(9), the outcome is the same: the District Court lack[s] jurisdiction to hear it." *See Tazu*, 975 F.3d at 299 (emphasis provided).

The Third Circuit has addressed instances where these two provisions overlap and work together, clarifying that Congress intended for claims challenging the revocation of OSUP and re-detention for the purpose of executing a final order of removal to be funneled into a petition for review—which only the appropriate court of appeals has jurisdiction to adjudicate. *See Tazu*, 975 F.3d at 294 ("Section "1252(g) strips us of jurisdiction to review the Attorney General's 'decision or *action* … to … execute removal orders against any alien[,]" while "§ 1252(b)(9) makes a petition for review—not a habeas petition—the exclusive way to challenge 'any action taken or proceeding brought to remove an alien.'") (quoting 8 U.S.C. § 1252(b)(9)) (emphasis added).

In *Tazu*, the Third Circuit evaluated, among other issues, an alien detainee's "challenge[ to] his detention" and his argument "that the Government violated its own regulations and thus due process by detaining him without notice, a revocation interview, and an orderly departure." *Id.* at 295–96. Tazu entered the United States unlawfully in 1993. *Id.* at 294. During removal proceedings in 2001, an Immigration Judge granted Tazu's request to leave voluntarily. *Id.* Tazu appealed to the Board of Immigration Appeals (the "BIA") raising an ineffective assistance of counsel claim, which, in 2003, the BIA denied, giving Tazu thirty days to voluntarily depart. *Id.* When Tazu did not voluntarily leave, "his grant of voluntary departure became an order of removal." *Id.* Tazu was subsequently detained while the Government attempted to remove him to his native country of Bangladesh; however, because "it seemed unlikely that a passport would be issued in the foreseeable future[,]" the Government released Tazu in 2009 on OSUP. *Id.* (cleaned up). Tazu remained on OSUP for the next decade and fully complied with the terms of his supervised release. *Id.* at 295. Yet, in 2019, the Government obtained a passport for Tazu and, three days later, "it re-detained him to execute his removal order." *Id.* at 295, 298. Tazu challenged the Government's decision to revoke his OSUP and re-detain him "without first giving him notice

and a revocation interview[,]" arguing that this "violated the agency's rules and thus due process." *Id.* at 299 (citing 8 C.F.R. § 241.4(*l*)(1)).

After Tazu's claims wound through the judicial system, he appealed to the Third Circuit which "construe[d] 8 U.S.C. § 1252(b)(9) and (g) "to decide whether the District Court had jurisdiction[.]". *Id.* at 295. The Third Circuit explained that Tazu's challenge to the Government's decision to re-detain him in order to execute his removal order did "not challenge the Attorney General's *decision* to execute his removal order, [but] it d[id] attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it." *Id.* 298.

In reaching this conclusion, the Third Circuit first evaluated the narrower jurisdiction bar, § 1252(g), and found that "[t]he text of § 1252(g) resolve[d] th[e] claim" at issue. *Id.* Indeed, "to perform or complete a removal, the Attorney General must exercise his discretionary power to detain an alien." *Id.* As such, "detention does not fall within some other 'part of the deportation process[,]'" *id.* (quoting *Reno*, 525 U.S. at 482), but falls squarely within the "decision or action by the Attorney General to…execute [a] removal order"—a decision or action that is insulated from judicial review outside of a petition for review. *See* 8 U.S.C. § 1252(g); *Tazu*, 975 F.3d at 298–99. Thus, the Third Circuit explained that, when re-detention is "simply the enforcement mechanism the Attorney General pick[s] to execute [an alien's] removal… § 1252(g) funnels review away from the District Court…." *Id.*

In applying the broader § 1252(b)(9) to the situation, the Third Circuit began by noting "that if a claim 'aris[es] from any action taken or proceeding brought to remove an alien,' then review of that claim 'shall be available only in judicial review of a final order.' In other words, § 1252(b)(9) funnels that claim into a petition for review.'" *Id.* at 299 (quoting 8 U.S.C. §

13

1252(b)(9)). Because § 1252(b)(9) applies specifically to actions taken or proceedings brought to "remove an alien[,]" the Third Circuit explained that, "'[t]o remove an alien' means to send him back permanently to his home country [or designated country of removal.]" *Id.* (citing *E.O.H.C.*, 950 F.3d at 184) (internal quotations added) (quoting 8 U.S.C. § 1252(b)(9)). Thus, it follows, that when the Attorney General re-detains an alien so that he may be removed to the country designated in his final order of removal, "the legal questions [an alien] raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus 'aris[e] from') an 'action taken' to remove him[.]" *Id.* Therefore, the Third Circuit found that Tazu's "re-detention challenge *is* directly about removal[;]…[thus,] under § 1252(g) or § 1252(b)(9), the outcome is the same: the District Court lacked jurisdiction to hear it." *Id.*

Here, Petitioner alleges that his detention violates due process, ECF No. 11, p. 3, as "ICE detained him without following the proper re-detention procedures." ECF No. 11, p. 5. In this way, Petitioner's claim mirrors that which the Third Circuit addressed in *Tazu. See* 975 F.3d at 295–96 (Tazu "challenge[d] his detention, arguing that the Government violated its own regulations and thus due process by detaining him without notice, a revocation interview, and an orderly departure."). Here, just as in *Tazu*, Petitioner is subject to a final order of removal and, presumptively, was re-detained for the purpose of executing his final order of removal. *See id.* at 299; ECF No. 11, p.2 (explaining that an Immigration Judge ordered that Petitioner be removed to Vietnam in 2005 "based on a criminal conviction in 2003 involving controlled substances."). As such, just as in *Tazu*, 8 U.S.C. § 1252(b)(9) and (g) prevent this Court from adjudicating Petitioner's claim. *See Tazu*, 975 F.3d at 298–99 ("Re-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal. So § 1252(g) funnels review away from the District Court…."); *id.* (finding that because "Tazu's claim ar[ose] out of the action

to remove him [,]" "[s]ection 1252(b)(9) also eliminates the District Court's jurisdiction over Tazu's re-detention claim, as it 'arises from' an action taken to execute his removal."); *see also Rranxburgaj v. Wolf*, 825 F. App'x 278, 283 (6th Cir. 2020) ("In the REAL ID Act, Congress decided that, as a matter of public policy, we do not have jurisdiction to decide claims that arise from the decision of the Executive Branch to execute a removal order—like the ones presented in this suit. Accordingly, whether or not we agree with ICE's decision to execute [a] plaintiff's removal order. . . th[at] decision[] [is] not reviewable by" district courts).

Therefore, the Court must DENY Petitioner's Motion insofar as he requests injunctive relief relative to his re-detention claim as this Court lacks jurisdiction to adjudicate said claim.[5]

### c. Request for an Injunction Granting Petitioner Immediate Release

In Petitioner's Motion for a T.R.O., ECF No. 10, Petitioner requests that this Court order his immediate release. *Id.* at p. 1. However, Petitioner has not sufficiently alleged a basis upon which such relief would be appropriate at this time. Therefore, the Court will DENY Petitioner's Motion insofar as it requests injunctive relief in the form of immediate release.

An appropriate Order follows:

---

[5] Because Petitioner's claim "sound[s] in due process, barring all judicial review could raise constitutional concerns. But he can raise all his claims in a petition for review." *Tazu*, 975 F.3d at 299 (citing 8 U.S.C. § 1252(a)(2)(D)). Thus, the Third Circuit explained that "[t]here is no constitutional problem with funneling them there." *Id.* Indeed, because Petitioner's claim "raise[s] 'constitutional claims or questions of law,' jurisdiction to hear [it] in a petition for review 'is never limited or eliminated.'" *Id.* at 300 (quoting *McAllister v. Attorney General of the United States*, 444 F.3d 178, 183 (3d Cir. 2006)). Counter to fact, if a Petitioner could "restyle any challenge to the three actions listed in § 1252(g) as a...violat[ion of] due process, equal protection, the Administrative Procedure Act, or some other federal law [so that a district court could maintain jurisdiction,] [t]hat would also contravene the Supreme Court's holding...which funneled review even of constitutional challenges into a single petition for review filed with the appropriate court of appeals." *Tazu*, 975 F.3d (citing *Reno*, 525 U.S. at 483) (internal citation omitted). Thus, this Court is prohibited from adjudicating Petitioner's claim relative to ICE's decision to re-detain him in August 2025. Still, the same provisions which strip this Court of jurisdiction, enunciate that jurisdiction exists in other judicial bodies to adjudicate Petitioner's claim.

## ORDER

AND NOW, this 10th day of December 2025, upon due consideration of Petitioner Trong Ho Luong's ("Petitioner") Motion for a T.R.O., ECF No. 10, the Court finds that he has failed to make a sufficient showing to obtain either a T.R.O. or P.I. at this time. Therefore, **IT IS HEREBY ORDERED** that Petitioner's Motion at ECF No. 10 is **DENIED**; and,

**IT IS FURTHER ORDERED** that Petitioner's Habeas Petition at ECF No. 1 remains before the Magistrate Judge for consideration in the first instance, to the extent that consideration is not barred by the jurisdictional principles enunciated in the foregoing Memorandum Order.

BY THE COURT:

_____
STEPHANIE L. HAINES
UNITED STATES DISTRICT JUDGE