IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRONG HO LUONG, | ) |
| | ) Case No. 3:25-cv-00422 |
| *Petitioner*, | ) |
| | ) |
| v. | ) Magistrate Judge Kezia O. L. Taylor |
| | ) |
| LEONARD ODDO, et al., | ) |
| | ) |
| *Respondents*. | ) |

**MEMORANDUM OPINION**

For the reasons that follow, the Petition for Writ of Habeas Corpus, ECF No. 1, will be granted to the extent Petitioner is requesting release from custody, subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3). To the extent such relief is requested, Petitioner's counsel may file a motion seeking costs and attorneys' fees.

**A. Background**

Pending before the Court is a counseled Petition for Writ of Habeas Corpus ("Petition") filed by Petitioner Trong Ho Luong ("Petitioner"), an immigration detainee, pursuant to 28 U.S.C. § 2241. ECF No. 1. Petitioner is a fifty-six-year-old citizen of Vietnam who resettled in the United States at age eleven in April 1980, as a refugee following the Vietnam War. *Id*. ¶¶ 1, 30. Petitioner is married to a United States citizen, with two United States citizen children who are both under the age of eighteen. *Id*. ¶ 31. On or around 2003, Petitioner was charged with felony drug trafficking. *Id*. ¶ 32. He pleaded guilty and ICE subsequently detained him and placed him into removal proceedings. *Id*. An Immigration Judge ("IJ") entered an order of removal to Vietnam for Petitioner on March 9, 2005, and both parties waived appeal.[1] *Id*. Vietnam was designated as the country of removal for Petitioner; however, immigration

---

[1] Both parties agree that the order of removal is administratively final.

authorities could not carry out Petitioner's removal because at that time no repatriation agreement existed between the United States and Vietnam for individuals who had left Vietnam before 1995. *Id*. ¶¶ 33, 41. After a period of detention in immigration custody of what is believed to be more than ninety days, Petitioner was released under an order of supervision ("OSUP") with instructions to report in person each year. *Id*. ¶ 34. When Petitioner appeared for his annual ICE check-in on or about August 19, 2025, an ICE officer detained him without prior written notice that his OSUP was being revoked. *Id*. ¶ 37. Petitioner was served with a Notice of Revocation of Release that stated his OSUP was revoked because "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case." ECF No. 14-5.

As of the date of this writing, Petitioner is detained at the Moshannon Valley Processing Center and has been in ICE custody for six months pursuant to 8 U.S.C. § 1231(a), which provides for the detention and removal of aliens with final orders of removal. According to the record before the Court, Vietnamese officials have not yet issued travel documents for Petitioner.

In his Petition, Petitioner argues, *inter alia*, that he should no longer be detained because there is no significant likelihood of his removal to Vietnam in the reasonably foreseeable future, and he requests, among other forms of relief, that the Court order his immediate release. *See*, *generally*, ECF No. 1. The Government filed a response to the Petition, ECF No. 14, and Petitioner filed a reply thereto, ECF No. 20. This matter is thus ripe for review.

**B. Jurisdiction**

Jurisdiction exists under 28 U.S.C. § 2241 "for statutory and constitutional challenges to post-removal-period-detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Roe v.*

*Oddo*, No. 3:25-cv-128, 2025 WL 1892445, at *4 (W.D. Pa. July 9, 2025) (holding that 8 U.S.C. § 1252(g) did not strip the court of jurisdiction since it was "examining the contest of Petitioner's detention" and not "reviewing Petitioner's removal order.").

The Supreme Court of the United States has explained that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas relief applies to petitioners seeking relief from executive detention but not to petitioners seeking to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 116-120 (2020). The Court has jurisdiction in this case because Petitioner is contesting legality of his detention, not the execution of his order of removal.

C. **Discussion**

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any final order of removal. 8 U.S.C. § 1231(a). That said, once the time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute[,]" and the noncitizen must be released. *Zadvydas*, 533 U.S. at 699. "Indefinite, perhaps permanent, detention" is not authorized. *Id*.

In *Zadvydas*, the Supreme Court interpreted § 1231(a) to limit postremoval detention to a period "reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. The Court found that postremoval detention for six months is "presumptively

3

reasonable," but beyond those six months, if removal is no longer reasonably foreseeable, continued detention becomes unauthorized.[2] *Id*. at 699.

That said, the expiration of six months does not entitle every noncitizen to be released. Rather, the government may continue detention until no significant likelihood of removal in the reasonably foreseeable future exists. *Id*. at 701.  Accordingly, under *Zadvydas* the noncitizen has the initial burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]"  *Id*. at 701.  Once the noncitizen provides such "good reason," the burden shifts to the government to rebut the noncitizen's allegations. *Id*.  No clear guidance exists to aid courts in making the determination as to whether a significant likelihood of removal in the reasonably foreseeable future exists.  Ultimately, determining what the "reasonably foreseeable future" is requires a factual determination to be undertaken by the habeas court looking into the circumstances and detention length of each individual petitioner. But, the reasonableness of the detention shrinks as the time of post-removal confinement grows. *Zadvydas*, 533 U.S. at 701.

At the time of this writing, Petitioner has been detained pursuant to § 1231(a) for at least six months, outside the "presumptively" reasonable time period announced in *Zadvydas*.  Under *Zadvydas*, once a petitioner has articulated a "good reason to believe" that removal is unlikely in the reasonably foreseeable future, the burden shifts to the government to rebut that showing. Petitioner has made such a showing here.

---

[2] To comply with *Zadvydas*, DHS promulgated regulations that establish a series of processes to address the concerns discussed in that decision and to determine whether a noncitizen should be released from custody after the expiration of the 90-day removal period. *See* 8 C.F.R. §§ 241.4 and 241.13.  These regulations provide for administrative custody reviews at 90 days, 180 days, and one year.  8 C.F.R. § 241.14(k).

Petitioner has set forth a detailed history of diplomatic agreements between the United States and Vietnam as to the repatriation of Vietnamese immigrants who have been ordered removed from the United States. ECF No. 1 ¶¶ 40-48. Initially, it is noted that "Vietnam has long refused to accept for deportation Vietnamese nationals who came to the United States as refugees before 1995." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 714 (W.D. Wash. 2025). Because Vietnam consistently refused to repatriate pre-1995 immigrants, "ICE adopted a policy of detaining pre-1995 Vietnamese immigrants for no longer than ninety days after their removal orders became final." ECF No. 1 at ¶ 43. In November 2020, the United States and Vietnam entered into a Memorandum of Understanding ("MOU"),[3] which creates a process for deporting pre-1995 immigrants, like Petitioner.[4] *Id.* ¶ 46. The MOU "obliges the United States and Vietnam to consider specific factors prior to deciding to remove a Vietnamese citizen and prior to deciding to accept for repatriation a Vietnamese citizen." *Id*.

Section 4 of the MOU, entitled "Eligibility for Acceptance of Return," states Vietnam intends to accept the removal of individuals who meet four conditions:

> "1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;

---

[3] The document, titled "Memorandum of Understanding Between The Department of Homeland Security of the United States of America and The Ministry of Public Security of the Socialist Republic of Viet Nam on The Acceptance of the Return of Vietnamese Citizens Who Arrived in the United States Before July 12, 1995 and Who Have Been Ordered Removed from the United States" was not submitted by either of the parties. However, Petitioner provided the Court with following website where it can be accessed online: https://cdn.craft.cloud/5cd1c590-65ba-4ad2-a52c-b55e67f8f04b/assets/media/ALC-FOIA-Re-Release-MOU-bates-1-8-8-10-21.pdf (last visited February 18, 2026).

[4] According to Petitioner, between September 2021 and September 2023, the United States deported only four pre-1995 Vietnamese immigrants. *Id*. ¶ 47.

> "2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);
>
> "3. Resided in Viet Nam prior to arriving to the United States and currently has no right to reside in any other country or territory."
>
> 4. [REDACTED][5]

Section 5 and 6 of the MOU contain factors that the United States intends to consider before requesting travel documents for a Vietnamese citizen and that Vietnam intends to consider before accepting an individual ordered removed. These factors are also redacted and have not been disclosed in this litigation. And Second 8 is titled "Procedures for Verification and Issuance of Travel Documents." Under Section 8, ICE must request appropriate travel documents from Vietnamese officials before removal. The documentation package is expected to contain a cover letter, the self-declaration form, a copy of the individual's final order of removal, copies of records related to the individual's criminal convictions and incarceration, if applicable, photographs and fingerprints, and copies of citizenship documents such as expired passports, national identity cards, birth certificates, or expired travel documents.

After the request for a travel document is received, Vietnam "intends to issue the travel document" within thirty days "when the individual meets the eligibility criteria listed in Section 4 of this MOU." For individuals who do not meet the eligibility criteria, the MOU sets out a process through which the United States and Vietnam will try to "resolve the case," which may include gathering additional information, convening a working group, considering "the

---

[5] The fourth mandatory condition is redacted and the Government has not disclosed any information about what that condition requires.

humanitarian and family unity factors of the individual ordered removed," and conducting interviews.

To provide context regarding the Vietnamese travel document process, Petitioner has submitted for consideration the declaration of Dr. Thao Ha who holds a doctorate in Sociology with an emphasis on immigration, refugee resettlement, and Vietnamese American sociocultural history. ECF No. 20-1 ¶ 1. According to Dr. Ha, Vietnam requires proof of citizenship, which most refugees lack because of war, displacement, rural births, or destruction of records. *Id*. ¶ 11. He states that "the application process requires Vietnamese-language forms, consular submission, and vetting[,]" and processing times are "unpredictable." *Id*. ¶ 12. He states that quarterly reports required to be produced by ICE covering the period from December 2021, through September 2023,[6] show that: (1) "Pre-1995 Vietnamese nationals were detained for prolonged periods ranging from 47 to 529 days;" (2) "The average detention exceeded 160 days;" (3) "Travel document issuance was inconsistent;" and (4) "Departure dates were frequently unknown or never scheduled." *Id*. ¶ 16. Thus, according to Dr. Ha, "even after the 2020 MOU, removal of pre-1995 Vietnamese refugees remains individualized, unpredictable, and frequently not achievable within a reasonable period of time." *Id*. ¶ 17.

Petitioner also submitted the declaration of Tin Thanh Nguyen, a licensed attorney in North Carolina who has specialized in immigration and deportation cases involving Vietnamese citizens for nearly twenty years. ECF No. 20-2. Attorney Nguyen states that "the most challenging client matters involve those clients who immigrated to the United States before 1995, typically as refugees from armed conflict that occurred in Southeast Asia during the 1970s

---

[6] This data is produced as part of the settlement agreement reached in the class action litigation *Trinh v. Homan*, No. 3:18-cv-01869 (N.D. Cal.). ECF No. 20-1 ¶¶ 15-16.

and 1980s ('Pre-1995 arrivals')." *Id*. ¶ 11.  Attorney Nguyen states that the likelihood that Vietnam will issue a passport or travel document to a pre-1995 arrival is uncertain and unknowable due to the Vietnamese government's "highly individualized process." *Id*. ¶¶ 17, 21. Responses can take months and the Vietnamese government may take no action. *Id*. ¶¶ 18-19. He maintains that, in his experience, "when an application fails to pass [the] substantial vetting process, the Vietnamese government will not issue a formal denial of the application but rather will take no action and, in doing so, will in effect be an informal denial." *Id*. ¶ 18.

Based on the Petitioner's evidence, the Court finds that Petitioner has shown that the process for procuring travel documents from Vietnam for pre-1995 immigrants remains uncertain and protracted.  Thus, the Court concludes that Petitioner has met his burden of establishing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

The question now becomes whether the Government has come forward with sufficient evidence to "rebut that showing." *Zadvydas*, 533 U.S. at 701.  "A remote possibility of an eventual removal is not analogous to a significant likelihood that removal will occur in the reasonably foreseeable future." *Escalante*, 2025 WL 2206113, at *4 (quoting *Kane v. Mukasey*, No. CV B-08-037, 2008 WL 11393137, at *5 (S.D. Tex. Aug. 21, 2008), *superseded by*, 2008 WL 11393094 (S.D. Tex. Sept. 12, 2008) (a new report and recommendation was entered denying the petition as moot because petitioner was deported prior to the order adopting the R&R), adopted by 2008 WL 11393148 (S.D. Tex. Oct. 7, 2008)).

The Government's brief as it pertains to Petitioner's *Zadvydas* claim rests solely on the argument that Petitioner has not met his burden.  The Government has failed to argue facts, much

less submit any evidence, to suggest that Petitioner's removal from the United States is imminent or likely to occur in the reasonably foreseeable future. Instead, what has been submitted demonstrates that Petitioner's removal is speculative at best. Specifically, the Government has submitted the declaration of Kirby Tejeda, a Supervisory Detention and Deportation Officer stationed at Moshannon Valley Processing Center. ECF No. 14-1. Mr. Tejeda states that Petitioner returned a travel document application on October 16, 2025, a travel document application to the Vietnam Consulate was submitted for Petitioner on November 20, 2025, and on December 2, 2025, a request for assistance with the issuance of a travel document was sent to Removal and International Operations (HQ-RIO). *Id*. ¶¶ 14-15, 17. Based on this information alone, Mr. Tejeda states that "[i]t is anticipated that Petitioner's removal from the United States is imminent." *Id*. ¶ 19.

Mr. Tejeda signed his declaration on December 10, 2025, and, over two months later, it appears that Vietnam has still not issued a travel document. Although the Government fails to mention the 2020 MOU with Vietnam, it is significant to note that it is not clear whether the MOU even applies to Petitioner specifically, and, even if it does, the MOU does not mandate that Vietnam accept all eligible pre-1995 Vietnamese refugees with orders of removal. As one court noted, the 2020 MOU "is not enough to show there is a significant likelihood that Petitioner will be removed to Vietnam because the memorandum does not mandate that Vietnam will accept Petitioner." *Hoac v. Becerra*, No. 2:25-CV-01740, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025). Thus, even assuming Petitioner is eligible to be removed to Vietnam under the 2020 MOU, which the Government has not established, DHS may only request his removal. Vietnam has total discretion on whether to issue a travel document to him.

9

Because there is nothing to indicate that the Government has made any significant progress in carrying out Petitioner's removal, and the record, as it stands, suggests that Petitioner's removal is speculative at best, the Court finds that the Government has failed to rebut Petitioner's showing that there is good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  The Petition will therefore be granted insofar as the writ will be issued directing Petitioner's release from custody subject to appropriate conditions in accordance with 8 U.S.C. § 1231(a)(3).  A separate order will be issued.[7]

Dated:  February 20, 2026.

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge

Cc: Counsel of record
(Via CM/ECF electronic mail)

---

[7] Given this disposition, the Court declines to address Petitioner's remaining claims.